**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

THEODORE K. WILSON
and TINA M. WILSON,

                 Plaintiffs,

v.                                          CIVIL ACTION NO.  5:09-cv-00483

DELL FINANCIAL SERVICES, L.L.C.,

                 Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dell Financial Services, LLC's Motion to Compel Arbitration and Dismiss this Proceeding or, in the Alternative, to Stay this Proceeding Pending Arbitration [Docket 4].

*I.  BACKGROUND*[1]

This action arises from the allegedly unlawful debt collection practices of Defendant Dell Financial Services LLC (DFS), with regard to debts owed by Plaintiffs Theodore K. and Tina M. Wilson.  On April 15, 2003, Mrs. Wilson opened a credit account serviced by DFS which could be used to finance the purchase of computer equipment from Dell, Inc.  DFS mailed a Dell Preferred Account Credit Agreement (Agreement) to Mrs. Wilson which contained the terms and conditions of the credit account.  It also contained the arbitration clause at issue here.  The Agreement specified

---

[1]  The facts in this section are taken from the complaint and Defendant's motion to compel arbitration.  These facts appear to be undisputed.

that Mrs. Wilson would be bound by its terms if she did not notify DFS of her rejection of them within twenty-four hours and if she thereafter accepted any goods financed with the DFS account. DFS did not receive notification from Mrs. Wilson rejecting the terms of the Agreement, and her account was used for a number of purchases between the date it was opened and April 2008.

DFS's alleged actions to collect debts owed on the account, including telephone calls and letters to the Wilsons, form the factual basis for the claims in the complaint.  The Wilsons' complaint, which was originally filed in the Circuit Court of Raleigh County, West Virginia, on March 31, 2009, contains four counts.  Count One asserts claims under the West Virginia Consumer Credit and Protection Act (WVCCPA), W. Va. Code §§ 46A-1-101 *et seq.*; Count Two asserts a common law negligence claim; Count Three asserts a claim for intentional infliction of emotional distress and violations of W. Va. Code § 61-8-16, the State statute prohibiting harassing telephone calls; and Count Four asserts a claim for invasion of privacy.   The complaint does not differentiate between claims asserted by Mrs. Wilson and claims asserted by Mr. Wilson.  Throughout, the complaint refers only to "Plaintiffs" in the plural.  On May 1, 2009, Defendants removed the action by invoking this Court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446.

On May 7, 2009, DFS filed the pending motion to compel arbitration.  DFS contends that the claims filed by the Wilsons against DFS are within the scope of the arbitration agreement, which is valid and enforceable as to both Mr. and Mrs. Wilson.  The period in which the Wilsons could respond to this motion has passed; therefore, this motion is ripe for the Court's consideration.

## II. DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, invests United States district courts with authority to compel arbitration in cases where a party has failed to abide by a valid arbitration

2

clause.  9 U.S.C. § 4.  To prevail on a motion to compel arbitration, the party seeking to arbitrate

bears the burden of showing: "(1) [t]he making of the agreement and (2) the breach of the agreement

to arbitrate."  *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir.

1981).  A party's obligation to forgo the right to litigate a dispute in court and to submit the matter

to arbitration must founded on a valid and enforceable contract.  *Am. Bankers Ins. Group v. Long*,

453 F.3d 623, 626–27 (4th Cir. 2006).  The existence of a valid and enforceable contract is governed

by the contract formation and interpretation principles of the forum state.  *Cara's Notions v.

Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). The scope of a valid arbitration clause,

however, is governed by the "federal substantive law of arbitrability."  *Int'l Paper Co. v.

Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (quoting *Moses

H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

When construing the scope of an arbitration agreement, "due regard must be given to the

federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself

[must be] resolved in favor of arbitration."  *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis.,

Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).  "[T]he district court

must first . . . engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid

agreement to arbitrate exists between the parties and that the specific dispute falls within the

substantive scope of that agreement."  *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.

1997) (citations and quotation marks omitted).  "Once the court determines that a claim falls within

the scope of an arbitration provision, the court has no authority to consider the merits of the claim,

even if it appears to be frivolous, and must order the claim to arbitration."  *Adkins v. Labor Ready,*

*Inc.*, 185 F. Supp. 2d 628, 634 (S.D. W. Va. 2001) (Copenhaver, J.) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Although it is generally true that a party cannot be bound to the terms of a contract that the party did not sign, "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Int'l Paper*, 206 F.3d at 416. There are five recognized exceptions to the general rule, all "arising out of common law principles of contract and agency law": "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Id*. at 417 (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). The only exception of interest to the present case is estoppel.

Under the equitable estoppel theory, a nonsignatory to a contract cannot accept the benefits of the contract or seek to enforce a duty arising from the contract while simultaneously resisting the operation of the contract's arbitration clause. "This legal principle rests on a simple proposition: it is unfair for a party to 'rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage.'" *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (quoting *Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp*., 659 F.2d 836, 839 (7th Cir. 1981)). To invoke the theory of equitable estoppel, it is not enough that the nonsignatory's claims are "intimately related" to the contract; the nonsignatory must have received some direct benefit from the contract. *Davidson v. Becker*, 256 F. Supp. 2d 377, 383 (D. Md. 2003) (citing *Int'l Paper*, 206 F.3d at 418).

A. *Validity and Enforceability of Arbitration Clause*

The Court's first task is to determine if the Agreement's arbitration clause is valid and enforceable under West Virginia contract law. Plaintiffs have not argued that the arbitration clause

in the Agreement is not enforceable.  Nonetheless, DFS bears the burden of demonstrating that a valid contract exists.  *Mercury Constr. Corp.*, 656 F.2d at 939.

The Agreement at issue in this case was a standard form agreement mailed to Mrs. Wilson in response to her telephone request for a credit account with DFS.  The Agreement states, in part, "If you do not contact us, your acceptance of any products you purchased constitutes use of the credit offered and acceptance of the terms and conditions of the Agreement."  (Docket 4-3.)  Mrs. Wilson never rejected the terms of the Agreement and made several purchases with the credit account, showing at least tacit assent to be bound by its terms. *Cf. Mitchell v. Broadnax*, 537 S.E.2d 882, 898 (W. Va. 2000) (Starcher, J., concurring) (noting that parties often assent to the terms of standardized form contracts without reading or understand their terms); *Schultz v. AT&T Wireless Servs.*, 376 F. Supp. 2d 685, 691–92 (N.D. W. Va. 2005).

The Agreement is properly characterized as an adhesion contract.  West Virginia's Supreme Court of Appeals has defined adhesion contracts as "all 'form contracts' submitted by one party on the basis of this or nothing."  *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (W. Va. 2002) (quoting *Am. Food Mgmt. Inc. v. Henson*, 434 N.E.2d 59, 62–63(Ill. App. Ct. 1982)).  Adhesion contracts, like any other contract, can be valid and enforceable.  *Saylor v. Wilkes*, 613 S.E.2d 914, 922 (W. Va. 2005).  However, the Court will not hold a party to the terms of an adhesion contract if it is contrary to the reasonable expectations of the less-sophisticated party or if its terms are unconscionable.  *Id.* at 273 n.3.

Arbitration clauses in adhesion contracts traditionally have been met with hostility by state courts in West Virginia.  S*ee id.* at 279–80; *Bd. of Educ. v. W. Harley Miller, Inc.*, 236 S.E.2d 439, 486 (W. Va. 1977) (likening arbitration clauses in adhesion contracts to "contract[s] between the

rabbits and foxes, in which the foxes impose the clause that all disputes will be resolved by a panel of foxes").  West Virginia requires that arbitration clauses be "bargained for" in order to be enforceable.  Syl pt. 4, *Saylor*, 613 S.E.2d 914.  Rarely, if ever, could an adhesion contract be characterized as "bargained for."  However, the FAA preempts "state rules of contract formation which single out arbitration clauses and unreasonably burden the ability to form arbitration agreements." *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 723 (4th Cir. 1990).  West Virginia's "bargained for" requirement unreasonably burdens the ability to form arbitration agreements and is therefore preempted by the FAA.  *Schultz*, 376 F. Supp. 2d at 689.

There is no indication that the arbitration clause in the Agreement between Mrs. Wilson and DFS is contrary to Mrs. Wilson's reasonable expectations or unconscionable.  Arbitration clauses are an increasingly common aspect of consumer purchasing and lending agreements, and there is no reason to find that the arbitration clause at issue here was contrary to Mrs. Wilson's objectively reasonable expectations.  Likewise, Plaintiffs have not demonstrated that any aspect of the arbitration clause is unconscionable.  Therefore, the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, should be given effect.

   *B. Scope of Arbitration Clause*

By its terms, the arbitration clause in the Agreement applies to "[a]ny claim, dispute or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement . . . ." (Docket 4-3.)  Broad arbitration clauses, like the one here, purporting to cover all claims arising out of or relating to the contract are

6

construed as "embrac[ing] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 321 (4th Cir. 1988); *see also Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 94 (4th Cir. 1996).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Here, all of the claims in the complaint fall within the ambit of the Agreement's broadly worded arbitration clause.  The purpose of the Agreement was to establish a debtor-creditor relationship between Mrs. Wilson and DFS.  DFS's efforts to collect debts Mrs. Wilson incurred pursuant to the Agreement, by sending collection letters and placing telephone calls to her residence, form the factual basis for each of the claims in the complaint.  Thus, the claims have a significant relationship to the Agreement and are governed by the arbitration clause.

### C.  Arbitrability By Estoppel of Mr. Wilson's Claims

Though Mr. Wilson's claims are undifferentiated from Mrs. Wilson's, Mr. Wilson is not a party to the Agreement.  The arbitrability of a party's claims is a function of a valid and enforceable contract.  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  As a nonsignatory to the Agreement between Mrs. Wilson and DFS, Mr. Wilson cannot be compelled to arbitrate his claims unless he may be held to its terms by some equitable principle.

Embodying the maxim, "Equity regards as done that which ought to be done," *Walker v. Brown*, 165 U.S. 654, 665 (1897), the theory of equitable estoppel in the arbitration context dictates that a nonsignatory to an arbitration agreement should be bound by its terms if equity so demands.  Stated generally, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause

when it receives a direct benefit from a contract containing an arbitration clause."[2] *Int'l Paper*, 206 F.3d at 418.  Equity will not bind a nonsignatory to an arbitration clause merely because he received some incidental benefit from the contract and subsequently sues a party to the contract.  *Schmidt*, 445 F.3d  at 770.  To be subject to equitable estoppel, the nonsignatory's claims must, "either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause."  *Long*, 453 F.3d at 629; *see also Kepler Processing Co., LLC v. New Mkt. Land Co.*, 5:08-cv-00040, 2008 U.S. Dist. LEXIS 77714, at *18–19, 2008 WL 4509377, at *6 (S.D. W. Va. Oct. 2, 2008) (Johnston, J.) (applying equitable estoppel where a "party refusing to arbitrate also seeks to enforce rights that are contained in a contract to which it is not a party").  Stated differently, the nonsignatory must be suing to enforce a duty arising from the contract or, similarly, be suing to recover damages for a breach of a duty in the contract.  Where, however, the nonsignatory sues to enforce a duty that derives not from the contract, but from statute or common law, the contract's arbitration clause will be irrelevant.  *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 163–64 (4th Cir. 2004).

　　In the present case, Mr. Wilson's claims are predicated on allegations that DFS's debt collection activities violated various provisions of West Virginia law.  With respect to Mr. Wilson's WVCCPA claims, DFS's duties to Mr. Wilson arise by virtue of its status as debt collector.  Likewise, Mr. Wilson's other claims, all of which sound in tort, arise from DFS's duty to refrain from committing tortious actions within the State.  None of the rights Mr. Wilson seeks to vindicate implicate a duty of DFS contained in the Agreement, either literally or obliquely.

---

[2]  A different test applies when a nonsignatory to contract containing an arbitration clause seeks to compel a signatory to arbitrate a dispute concerning the contract.  *See Long*, 453 F.3d at 627 n.3.

DFS argues that because the complaint states that "Plaintiffs" are bringing a cause of action under WVCCPA, and because only a "consumer" who has incurred a debt can bring a cause of action under the WVCCPA, then Mr. Wilson must have incurred a debt to DFS under the terms of the Agreement.  (Docket 5 at 7–8.)  The implication of this argument is that Mr. Wilson benefitted from the Agreement by making purchases with Mrs. Wilson's credit account.  Aside from the fact that the argument rests on a questionable assumption not supported by the record,[3] it misses the point.  Any benefit Mr. Wilson may have received from buying computer equipment from Mrs. Wilson's account is tangential to the claims raised in the complaint.  Mr. Wilson is neither a party to the Agreement, nor is he suing to enforce a right contained in the Agreement.  Therefore, he cannot be compelled to arbitrate under an equitable estoppel theory.

### III.  DISPOSITION OF CASE

In accordance with 9 U.S.C. § 4, Tina Wilson's claims are referred to arbitration in accordance with the Agreement.  During the pendency of the arbitration, the matter will be stayed in all respects, including Theodore Wilson's pending claims.  9 U.S.C. § 3; *see also Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 97 (4th Cir. 1996).  Referring Mrs. Wilson's claims to arbitration, while leaving Mr. Wilson's claims to proceed in this Court, might well lead to a piecemeal resolution of this matter.  While such a fractured approach may be contemplated by the FAA, it is not an ideal use of judicial resources.  *See Am. Recovery Corp.*, 96 F.3d at 97.  Mr. Wilson is not prohibited, of course, from voluntarily submitting his claims to arbitration along with Mrs. Wilson's.  The possibility of full resolution of this matter in arbitration, with or without Mr.

---

[3]  DFS cannot entirely be faulted for resorting to this type of inductive reasoning.  The factual content of the complaint is unusually sparse, even under a notice pleading standard, which leaves little choice but to draw inferences about the facts from the Wilsons' legal claims.

Wilson's participation, justifies staying the entire case.  However, because outstanding issues may remain following the arbitration, the Court declines to dismiss this proceeding.

*IV.  CONCLUSION*

For the reasons set forth above, Defendant Dell Financial Services LLC's Motion to Compel Arbitration and to Stay Proceeding Pending Arbitration [Docket 4] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Plaintiff Tina M. Wilson's claims against DFS are hereby **REFERRED** to arbitration in accordance with terms of the Agreement.  This action is **STAYED** pending resolution of arbitration and **REMOVED** from the active docket of this Court.  The parties are **DIRECTED** to notify the Court in writing forthwith upon the conclusion of arbitration.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        July 16, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE